UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID SUSI,<br><br>    Plaintiff,<br><br>v.<br><br>LOUIS DEJOY, in his capacity as Postmaster General, U.S. Postal Service; and MELINDA NOONAN,<br><br>    Defendants. | Civil Action No. 21-cv-10595-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

    David Susi ("Plaintiff"), an employee of the United States Postal Service ("USPS"), brings a two-count complaint against his supervisor Melinda Noonan ("Noonan") and Postmaster General Louis DeJoy ("DeJoy") (collectively, "Defendants") alleging that he was discriminated and retaliated against on the basis of an actual or perceived disability. [ECF No. 1 ("Compl.")]. Currently before the Court is Defendants' motion to dismiss the case for lack of jurisdiction, insufficient service of process, and failure to state a claim. [ECF No. 6]. For the reasons set forth below, the motion to dismiss, [ECF No. 6], is GRANTED and the complaint is DISMISSED with leave to amend.

I.    **BACKGROUND**

    A.    **Factual Background**

    The following facts are drawn from the complaint and viewed in the light most favorable to Plaintiff. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citation omitted).

1

Plaintiff is an employee of the USPS who worked as a temporary Mail Handling Agent at all times relevant to this litigation.[1] [Compl. ¶ 10]. Prior to his employment with USPS, Plaintiff was diagnosed with diabetes, a "debilitating and life-threatening illness" that requires ongoing medical care. [Id. ¶ 11]. He experiences numerous symptoms related to his diabetes, including neuropathy in his feet (i.e., weakness, numbness, and pain as a result of nerve damage) and slowed speech, but claims that the chronic condition "d[oes] not substantially limit his ability to perform his job functions at the USPS." [Id. ¶¶ 12, 18].

Noonan is a Supervisor of Distribution Operations for USPS and Plaintiff's manager. [Compl. ¶¶ 3, 13]. Throughout Plaintiff's employment, she has "repeatedly demonstrated hostility, derision, and lack of care towards his well being [sic]" and "singled [him] out as a target [with] humiliating language." [Id. ¶¶ 14, 46]. This pattern of behavior included an incident on April 14, 2020, when Plaintiff overheard Noonan tell several of his colleagues that USPS wanted to fire him because he "was a drug user" who "us[es] drugs at work[.]" [Id. ¶ 15]. He further alleges that Noonan continued to spread these unfounded rumors "for at least two unbroken weeks," causing him distress. [Id. ¶¶ 19–20]. Plaintiff was particularly concerned that his family members, who work at the same USPS facility, would hear the rumors and thereby attempt to remove his daughter from his custody. [Id.]. He also feared that his colleagues would treat him poorly after being told that he was a drug user. [Id. ¶ 50]. Plaintiff emphasizes that he does not use drugs and thinks Noonan's mistaken belief to the contrary—and concomitant view

---

[1] Plaintiff has since been promoted to a full-time position. [Compl. ¶ 10].

that he is "not a person of value"—resulted from witnessing him have a diabetic episode at work, which culminated in him being carried out on a stretcher. [2] [Id. ¶¶ 17, 25, 34].

At some point after the April 14, 2020 incident—although Plaintiff does not specify the exact date—Noonan was "'called out[]' for disseminating falsehoods about [him,]" "accepted culpability" for the false statements, and was "compelled to write [him] an apology letter."[3] [Id. ¶¶ 21, 33, 58].

On or about August 23, 2020, and after Noonan had been "called out" and made to apologize to Plaintiff, one of the mail sorting machines broke and Noonan directed him "to transfer dozens of large, heavy, poorly balanced mail dollies from one end of the . . . facility to another, a distance of a hundred yards." [Compl. ¶ 22]. Plaintiff claims that Noonan assigned him this task in retaliation for her being reprimanded for making false statements about him. [Id. ¶ 59]. In any event, while completing the task, one of the dollies—estimated to weigh over 1,000 pounds—fell on Plaintiff's foot. [Id. ¶ 22]. Plaintiff claims the accident occurred because he was the only person assigned to complete the job and, possibly, because he was tired. [Id.].

Due to his neuropathy, which results in numbness and pain in his feet, Plaintiff did not immediately appreciate the severity of the injury caused by the accident, however, it did prompt him to buy a pair of orthopedic shoes that afternoon. [Id. ¶¶ 24, 30]. When he arrived at work

---

[2] Plaintiff asserts that witnessing his diabetic episode caused Noonan to believe he was a drug user but also put her on notice of his diabetes. These assertions are somewhat contradictory (e.g., if she believed the episode was the result of drug use, it does not necessarily follow that it put her on notice of his diabetes). Nonetheless, drawing all inferences in Plaintiff's favor, as the Court must at this stage in litigation, the Court assumes that Noonan was on notice of Plaintiff's medical condition as of the date of the episode. [Compl. ¶¶ 17, 25].

[3] The complaint does not identify who reprimanded Noonan and made her apologize. See generally [Compl.]. Plaintiff also claims that "[n]otwithstanding [USPS's] limited intervention in regards to the slanderous harassment," USPS has "refused to fully address the harassment and allowed [Noonan] to openly harass, demean, provoke, and antagonize [him.]" [Id. ¶ 52].

3

the next morning, on August 24, 2020, he showed Noonan his new shoes and explained why he had purchased them.[4] [Id. ¶ 31]. Noonan replied, "they look good" but otherwise ignored the injury even though she "had an obligation to inform [him] about his right to seek 'Continuation of Pay,' ["COP"] . . . as a result of his injury, and to provide him with a number of internal forms" needed to obtain COP.[5] [Id. ¶¶ 23, 27, 31]. Plaintiff claims that Noonan did not provide him with the forms required to seek COP benefits "because she did not want to work with a diabetic, like [him], who speaks slowly, and who had a diabetic episode at work."[6] [Id. ¶ 35]. He also suggests that Noonan's disregard for his injury was motivated by a retaliatory intent, claiming that he "would not have been required to return to work after his injury, had [Noonan] not originally claimed that he was a drug addict[] and been compelled to write an apology letter." [Id. ¶ 33].

Noonan's apparent disregard for his foot injury made Plaintiff feel pressured to come to work on August 25, 2022, "even though his foot was hurting him tremendously" to the extent that "he almost could not walk." [Id. ¶¶ 23, 29, 36]. Therefore, it was not until August 26, 2020, three days after the injury, that Plaintiff requested a day off from work to seek medical care. [Id. ¶ 37]. The first doctor he saw quickly referred him to a foot specialist who, in turn, referred him

---

[4] Plaintiff does not say whether he told Noonan about his injury on the day it happened or if he waited until the next day.
[5] Plaintiff did eventually apply for, and receive, COP and workman's compensation benefits. [Compl. ¶¶ 40, 42].
[6] Noonan was later questioned about her failure to inform Plaintiff about his right to seek COP benefits and she acknowledged that in her 13 years as a manager there was only one other instance where she did not provide an injured employee with the necessary forms. [Compl. ¶ 28].

to a surgeon because Plaintiff's foot appeared potentially gangrenous. [Id. ¶ 38]. Plaintiff ultimately underwent extensive surgery to address his injury and lost at least one toe.[7] [Id. ¶ 39].

### B.  Procedural History

On December 23, 2020, Plaintiff filed a complaint with the USPS Equal Employment Opportunity Office ("EEO Office"). [Compl. ¶ 7]. The EEO Office investigated and issued a final decision finding against Defendants, however, the complaint does not state when the final decision was issued. [Id.]. On April 9, 2021, Plaintiff filed the instant complaint alleging two claims: (1) discrimination in violation of Title VII and (2) retaliation. [Id. ¶¶ 45–63]. On August 30, 2021, Defendants moved to dismiss the complaint for lack of jurisdiction, insufficient service, and failure to state a claim. [ECF No. 6–7]. Plaintiff opposed the motion on October 14, 2021. [ECF No. 11–12].

## II.  LACK OF JURISDICTION

Defendants argue that the complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies. [ECF No. 7 at 6]. This argument is properly construed as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The Court addresses this first as "[f]ederal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013).

### A.  Standard of Review

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction.

---

[7] It is possible that Plaintiff lost more than one toe as his complaint seeks damages to address the "psychic damage he . . . incurred as a result of losing his foot." [Compl. ¶ 43].

Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).  Dismissal is appropriate only when the facts alleged in the complaint, taken as true and with the benefit of all reasonable inferences, do not support a finding of federal subject-matter jurisdiction.  Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

  **B.**  **Discussion**

  Defendants contend that the Court lacks subject-matter jurisdiction because Plaintiff failed to properly allege exhaustion under the Federal Tort Claims Act ("FTCA").  [ECF No. 7 at 6].  Plaintiff, however, has not brought any counts sounding in tort and thus the FTCA's exhaustion requirements are inapplicable.[8]  Nevertheless, the complaint, properly construed, brings claims under the Rehabilitation Act that are subject to Title VII's administrative procedures.[9]  See Stubbe v. McDonough, No. 20-cv-11915, 2022 WL 705489, at *3 (D. Mass. Mar. 9, 2022) ("A federal employee who brings an action under Title VII or the Rehabilitation Act must have exhausted his administrative remedies.") (citing Bartlett v. Dep't of the Treasury, 749 F.3d 1, 7–8 (1st Cir. 2014) and Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005)).[10]

  The administrative procedures governing claims under Title VII and the Rehabilitation Act provide that "[f]ederal employees alleging employment discrimination by a federal agency have the right to sue in federal district court '[w]ithin 90 days of receipt of notice of final action

---

[8] Plaintiff does claim that he suffered "psychic injury," see [Compl. ¶ 43], but this assertion relates to damage suffered as a result of the alleged discrimination and retaliation, and is not, as Defendants seem to suggest, an independent claim.

[9] Plaintiff concedes that his complaint mistakenly pleads violations of Title VII and that his claims alleging discrimination and retaliation based on disability are properly brought under the Rehabilitation Act.  [ECF No. 12 at 3–4].  Plaintiff is instructed to correct this error in his amended complaint.

[10] Although the First Circuit has not had an occasion to opine on this question, "every circuit court to address the issue has determined that a *federal employee* who brings an action under the Rehabilitation Act must exhaust administrative remedies before proceeding to court."  Barlett, 749 F.3d at 8 (citing Spence v. Straw, 54 F.3d 196, 199 (3d Cir. 1995) (collecting cases)).

taken by [the EEOC].'" Otolo v. Potter, No. 09-cv-10201, 2009 WL 10693607, at *3 (D. Mass Aug. 12, 2009) (citing 42 U.S.C. § 2000e-16(c)).  "The 90 day period is jurisdictional and the failure to file within the allotted 90 days is ordinarily fatal." Cheney v. Emmaus, Inc., No. 04-cv-11627, 2004 WL 2237701, at *1 (D. Mass. Oct. 5, 2004) (citing Basch v. Ground Round, Inc., 139 F.3d 6, 9 (1st Cir. 1998)).

Plaintiff asserts that he has "satisfied all statutory conditions precedent to bringing the current action by exhausting all administrative remedies." [Compl. ¶ 8]; see also [id. ¶ 44].  Yet, his complaint states only that the USPS EEO Office "conducted an investigation and issued a Final Agency Decision finding against the Defendants," without specifying the date when the final decision was issued.  [Id. ¶ 7].  The complaint similarly does not contain any factual allegations that indicate that Plaintiff commenced this lawsuit within 90 days of the USPS EEO Office issuing its final decision.  Compliance with the administrative prerequisites is a jurisdictional requirement, and because Plaintiff is the party asserting federal jurisdiction, it is his burden to plead facts that demonstrate his compliance.  He has not done so, and therefore his complaint must be DISMISSED.  Plaintiff may file an amended complaint that resolves the pleading insufficiencies discussed above.

### III.  INSUFFICIENT PROOF OF SERVICE

In order for the court to exercise personal jurisdiction over a defendant, the defendant must be served with process in accordance with Federal Rule of Civil Procedure 4.  Echevarria-Gonzalez v. Gonzalez-Chapel, 849 F.2d 24, 28 (1st Cir. 1988).  Defendants argue that the complaint was not properly served in part because "there have been no returns of service entered

on the docket in this case." [11] [ECF No. 7 at 5]. Plaintiff claims that he "is not aware" of how he failed to effect service, and that if deficiencies are found he is entitled to time to cure any defects. [ECF No. 12 at 3]. He does not, however, offer a response regarding insufficient proof of service. [Id.].

Federal Rule of Civil Procedure Rule 4(i)(2) sets forth two requirements when serving an agency of the United States. A party must serve the United States—either by delivering a copy of the summons and complaint to the United States attorney for the district where the action is brought or sending the summons and complaint to the Attorney General by registered or certified mail—and serve the agency. Fed. R. Civ. P. 4(i)(2). There is no dispute that Plaintiff properly served the United States and Dejoy, but that is not the end of the analysis. Federal Rule of Civil Procedure 4(l)(1) further requires that except in cases where service is waived—a circumstance not present here—"proof of service must be made to the court . . . by the server's affidavit."

The proof of service entered in this case is neither complete nor signed. See [ECF No. 5 at 4]. Nevertheless, "[f]ailure to prove service does not affect the validity of service," and "[t]he court may permit proof of service to be amended." Fed. R. Civ. P. 4(l)(3). Accordingly, within 45 days of the filing of the amended complaint, Plaintiff shall properly serve and enter on the docket proof of service that complies with the requirements of Rule 4(l). If Plaintiff fails to enter adequate proof of service, his claims may be dismissed without prejudice. Fed. R. Civ. P. 4(m).

---

[11] The Court does not address Defendants' arguments regarding insufficient service with respect to Noonan as Plaintiff has conceded she is not a proper party to this lawsuit and agreed to dismiss all claims against her. [ECF No. 12 at 7]. Therefore, all claims against Noonan are DISMISSED.

## IV.  FAILURE TO STATE A CLAIM

Because Plaintiff has not alleged sufficient facts to allow the Court to conclude that it has jurisdiction over this lawsuit and has not entered proper proof of service, the Court declines to address Defendants' arguments for dismissal on the merits under Federal Rule of Civil Procedure 12(b)(6).

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 6], is **GRANTED**. Plaintiff may file an amended complaint that asserts claims under the proper statute and pleads facts sufficient to allow the Court to determine whether it has jurisdiction, meaning whether his initial complaint was filed within 90 days of the USPS EEO Office's final decision. Plaintiff must also submit proper proof of service within 45 days of filing the amended complaint.

**SO ORDERED.**

July 27, 2022                                                                                           /s/ Allison D. Burroughs
                                                                                                                 ALLISON D. BURROUGHS
                                                                                                                 U.S. DISTRICT JUDGE