UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID SUSI, | * | |
|  | * | |
| Plaintiff, | * | |
|  | * | |
| v. | * | |
|  | * | Civil Action No. 21-cv-10595-ADB |
| LOUIS DEJOY, in his capacity as Postmaster General, U.S. Postal Service | * | |
|  | * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff David Susi ("Susi" or "Plaintiff"), an employee of the United States Postal Service ("USPS"), brings this two-count complaint against Postmaster General Louis DeJoy ("DeJoy" or "Defendant") in his official capacity. Susi alleges that he was discriminated and retaliated against on the basis of an actual or perceived disability. [ECF No. 14 ("Am. Compl.")]. Currently before the Court is Defendant's motion for summary judgment, [ECF No. 41], which, as more fully set forth below, is GRANTED.

I. BACKGROUND

A. Material Facts

Unless otherwise noted, the following facts are admitted as uncontroverted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, and stated in the light most favorable to Susi, the non-movant.[1]

---

[1] The Court draws the facts from Defendant's statement of material facts, [ECF No. 43], Susi's statement of material facts in response, [ECF No. 50], and, where necessary, the record.

1

At all times relevant to this action, Susi was employed as a mail handler assistant by USPS at the North Reading Mail Processing Facility in Massachusetts. [ECF No. 43 ¶¶ 1, 2]. Susi has been diagnosed with diabetes. [ECF No. 50 ¶ 2]. He is not a drug addict. [ECF No. 50-1 ¶ 10].

At some point between when Susi was hired at USPS[2] and April 28, 2020, Susi was carried out of work on a stretcher following a diabetic episode. [ECF No. 50 ¶ 8; ECF No. 43-1 ("Susi Dep.") 37:11–16, 42:21–43:8; ECF No. 43-2 ("Noonan Dep.") 56:24–58:3]. His supervisor, Melinda "Lynn" Noonan ("Noonan"), witnessed the event and was told that Susi is diabetic. [ECF No. 50 ¶ 9; Noonan Dep. 57:7–22].

On April 28, 2020, Susi heard Noonan involved in a discussion with other employees regarding Susi possibly having a drug abuse problem. [ECF No. 43 ¶ 3; ECF No. 50-2; Noonan Dep. 45:13–22]. Noonan had been involved in similar conversations with other employees (including supervisors) regarding Susi's potential drug abuse problem for about two weeks prior to that incident. [ECF No. 50 ¶ 11; ECF No. 50-2; Noonan Dep. 48:11–18]. Later that day, after a one-on-one meeting, Susi, for reasons disputed by the parties, received a written apology from Noonan. [ECF No. 43 ¶ 4; ECF No. 50 ¶ 13].[3] Notwithstanding this incident, Noonan never genuinely believed Susi was a drug addict because she knew that he was a diabetic. [ECF No. 50 ¶ 12].

---

[2] The record is unclear as to Susi's exact start date. See [ECF No. 43 at ¶ 1 ("Plaintiff was employed as a mail handler assistant by the United States Postal Service as of all dates relevant to this case but starting sometime prior to February of 2020.")].

[3] The parties dispute whether Noonan was "forced" to write the apology letter. Susi alleges that Noonan had "no choice" but to write the letter because he "would have to file a grievance" with the union, [Susi Dep. 80:11; ECF No. 50 ¶ 13]. Defendant asserts Noonan "was not forced to write the letter of apology by anyone; she decided to do it" after meeting with Susi. [ECF No. 43 ¶ 24]. The Court does not view this dispute as material, as per the analysis infra.

On August 23, 2020, Susi injured his foot when he accidentally ran over his toes while moving "very heavy" dollies. [ECF No. 43 ¶ 6; ECF No. 50 ¶ 20]. Immediately after the injury, Susi reported the incident to Noonan. [ECF No. 43 ¶ 7]. Noonan did not report the accident to Postal management on August 23, 2020, as required by policy. [Id. ¶ 8]. The parties dispute how Noonan responded to the injury. Susi alleges that Noonan was hostile to his complaint, never mentioned that he could go home or see a doctor, and told him to go to the doctor on his non-service days. [ECF No. 50 ¶¶ 22, 37]. Defendant alleges that Noonan asked Susi if he needed to go home, if he wanted to file a claim, and if he needed to see a doctor, and that he responded "no" to each of these questions. [ECF No. 43 ¶ 7]. Susi returned to work the following day (August 24) wearing new shoes, which he showed Noonan. [Id. ¶ 9]. Again, the parties dispute certain facts about this interaction. Susi alleges that he informed Noonan that his feet hurt when he showed her the new shoes. [ECF No. 50 ¶ 24]. Defendant alleges that Susi did not update Noonan on his injury and "merely showed her some new shoes." [ECF No. 43 ¶ 9]. Susi saw a doctor regarding his foot the next day (August 25). [Id. ¶ 12; ECF No. 50 ¶ 25]. On Saturday, August 29, 2020, which was the next day that both Susi and Noonan were working, Noonan filed an accident report. [ECF No. 43 ¶ 14]. As a result of the accident, Susi eventually needed to have three of his toes amputated. [ECF No. 50 ¶ 25].

Susi did not request an accommodation for his diabetes at any time prior to when he hurt his foot. [ECF No. 43 ¶ 28]. Additionally, before his toes needed to be amputated, Susi did not view his diabetes as interfering with his ability to work as a mail handler. [Susi Dep. 70:24–71:9; Am. Compl. ¶ 15 (stating Susi's "diabetic condition did not substantially limit his ability to perform his job functions at USPS")].

Susi first contacted the Equal Employment Opportunity Commission ("EEOC") on September 28, 2020, and then filed his formal complaint on January 11, 2021. [EFC No. 43 ¶ 16]. The EEOC investigated his claim and issued a final decision on February 8, 2021. [Id.]. This first EEOC contact was more than forty-five days after the alleged disparaging remarks from Noonan, which occurred in April 2020. [Id. ¶ 17].

### B. Procedural Background

Susi initiated this action on April 9, 2021. [ECF No. 1]. Defendants[4] moved to dismiss his complaint on August 30, 2021, [ECF No. 6]. The Court dismissed the complaint on July 27, 2022 with leave to amend. [ECF No. 13]. Susi filed the operative amended complaint ("Amended Complaint" or "Am. Compl."), bringing claims under the Rehabilitation Act for discrimination (Count I) and retaliation (Count II)[5] against DeJoy in his capacity as Postmaster General of the USPS. [Am. Compl. ¶¶ 65–86].

Following a period of discovery, Defendant moved for summary judgment on December 18, 2023. [ECF No. 41]. Susi opposed the motion on January 18, 2024. [ECF No. 48]. Defendant replied on February 1, 2024. [ECF No. 53].

## II.   LEGAL STANDARD

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under

---

[4] Susi's initial complaint named Noonan as a defendant. [ECF No. 1 at ¶ 3].

[5] The Court notes that Susi's Amended Complaint, the operative complaint, does not specify whether his retaliation claims have been brought under the Rehabilitation Act or under Title VII. See [Am. Compl. ¶¶ 78–86]. Because Susi argues retaliation under the Rehabilitation Act in his opposition to Defendant's motion for summary judgment, [ECF No. 49 at 8–12], the Court construes Count II as claiming retaliation as defined by the Rehabilitation Act.

4

the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio–Hernandez v. Fortuño–Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file ... demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir.2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses ...." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. North Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

In reviewing the record, a court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina–Muñoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina–Muñoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249–50 (1986)).

### III. DISCUSSION

#### A. Discrimination Claim (Count I)

To establish a claim for discrimination under the Rehabilitation Act, Susi "must prove by a preponderance of the evidence: 1) that he was disabled within the meaning of the ADA; 2) that he was qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and 3) that the employer took adverse action against him because of the disability." Bailey v. Georgia-Pac. Corp., 306 F.3d 1162, 1166 (1st Cir. 2002).[6] Generally speaking, to satisfy the first prong of the prima facie test—establishing that a plaintiff suffers from a protected disability—Susi must show that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).

Here, Susi's claim centers around two potential disabilities: 1) his diagnosed diabetes and 2) his coworkers' erroneous perception of him as a drug addict.

#### i. Diabetes

Defendant has admitted, for purposes of summary judgment, that Susi suffers from diabetes, but argues that Susi has not alleged that his diabetes substantially impacts any of his

---

[6] Although some of the cited case law references the Americans with Disabilities Act (or "ADA"), rather than the Rehabilitation Act, the Rehabilitation Act incorporates the definition of "disability" from the ADA, and, as such, the Court considers this case law instructive. See 29 U.S.C. § 705(20)(B); see also Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 12 n.1 (1st Cir. 2004) ("The same standards, however, apply to claims under the ADA and under the Rehabilitation Act.").

major life activities and, in fact, has asserted that his diabetes does not impact his ability to work. [ECF No. 42 at 11]. Susi responds that his diabetes has substantially limited his ability to interact with others. [ECF No. 49 at 6].

To qualify as disabled based on an existing physical impairment under the Rehabilitation Act, as distinguished from a "perceived" impairment, see infra, a three-part analysis is applied. "First, the plaintiff must establish that [he] suffers from an impairment. Next, the plaintiff must show that the impairment affects a major life activity, and third, that the impairment substantially limits the major life activity." King v. McDonough, 596 F. Supp. 3d 206, 220 (D. Mass. 2022) (quoting Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011)). The "phrases 'substantially limits' and 'major life activities' must be strictly interpreted to create a demanding standard for qualifying as disabled." Id. (quoting Rolland v. Potter, 492 F.3d 45, 47 (1st Cir. 2007)). As such, in order "to qualify as a disabled person under the Rehabilitation Act, an individual must have a permanent or long-term impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. at 220–21 (quoting Rolland, 492 F.3d at 47–48).

Interacting with others is considered a "major life activity" within the meaning of the Rehabilitation Act. See 29 C.F.R. § 1630.2(i); Connolly v. Woburn Pub. Sch., 659 F. Supp. 3d 92, 111 (D. Mass. 2023). That said, Susi has failed to provide any evidence (or point to any case law) that establishes that his diabetes substantially limits his ability to interact with others. See generally [Am. Compl.; ECF No. 49]. In fact, with the exception of a few tense exchanges with supervisors over working conditions, Susi has not provided any evidence that his interactions with his coworkers at the USPS or elsewhere were at all abnormal or strained. Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 15–16 (1st Cir. 1997) ("The evidence does not establish

7

that Soileau had particular difficulty in interacting with others, except for his supervisor. Impairment is to be measured in relation to normalcy, or, in any event, to what the average person does.").[7] Susi asserts primarily that his diabetes impacted his ability to interact with others because it led to people perceiving him as a drug addict, which is addressed infra.

Because Susi has failed to identify any other major life activities impacted by his diabetes or to provide evidence sufficient for a reasonable jury to conclude that his diabetes substantially limited his ability to interact with others, the Court cannot find that Susi experienced a substantial limitation of a major life activity resulting from his diabetes.

### ii. Perceived Drug Addiction

An individual is "regarded as" disabled when he is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity. 42 U.S.C. § 12102(3); see Sullivan v. Neiman Marcus Grp., Inc., 358 F.3d 110, 117 (1st Cir. 2004) (noting that the ADA "protect[s] employees from discrimination based on their employer's mistaken impression that they are disabled"). To establish a prima facie "regarded as" claim under the ADA, a plaintiff must show both that he had a perceived impairment and that "his employer was either aware of or perceived the impairment at the time of the allegedly discriminatory action…. In this context, the term 'employer' refers primarily to the person who actually made the allegedly discriminatory decision, not to other supervisors or

---

[7] This decision was published before 29 C.F.R. § 1630.2 was amended to include "interacting with others" among the list of major life activities. However, in reaching the substantial limitation prong of the analysis, the Soileau court assumed "that a colorable claim may be made that 'ability to get along with others' is or may be (on specific facts) a major life activity under the ADA" before engaging in a substantial limitation analysis. 105 F.3d 12 at 15. As such, the Court finds this analysis instructive.

8

officials within the organization."  Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 46 (1st Cir. 2018) (internal quotations and citations omitted).

Here, viewing all the evidence most favorably to Susi, the record does not demonstrate that Susi's coworkers at the USPS perceived him as a drug addict.  Regarding Noonan in particular, although Susi caught her discussing his possible drug addiction, he concedes that she did not actually believe he was a drug addict and instead knew that any perceived physical indications of drug addiction were in fact caused by his diabetes.  [ECF No. 50 ¶ 12].  She cannot both have perceived him as being disabled because of his addiction to drugs and have never believed that he was addicted to drugs.  Besides Noonan, Susi has provided very little evidence that anyone at the USPS viewed him as a drug addict, other than noting that a handful of people discussed the possibility over a two-week period.  [Id. ¶ 11; ECF No. 50-2; Noonan Dep. 48:11–18].  Even if these coworkers who were gossiping with Noonan during that time period in fact perceived him to be a drug addict, Susi would still fail to meet a prima facie case for discrimination based on a perceived disability, given that he has not provided any evidence that he was subject to discrimination during this two-week period or that these coworkers were the ones making allegedly discriminatory decisions.  Mancini v, 909 F.3d at 46.[8]

As such, Susi has failed to demonstrate that he is disabled within the Rehabilitation Act based on a perceived disability, and Defendant's motion summary judgment is therefore GRANTED as to Count I.

---

[8] The only supervisor other than Noonan that Susi alleges was potentially subjecting him to discriminatory decision-making at this time is Tarantino, who was assigning him the tedious work assignments discussed infra.  Susi has not, however, provided evidence that Tarantino perceived him to be a drug addict other than that Tarantino once told Susi he was "lucky" to have a job at the USPS.  Given Susi's admissions regarding his own work performance, [ECF No. 50 ¶ 4 ("Mr. Susi was not an excellent USPS employee.")], this is not enough for a reasonable jury to find that Tarantino viewed Susi as disabled because of a drug addiction.

### B. Retaliation Claim (Count II)

A claim of retaliation may be pursued "even if the underlying claim of disability fails." Soileau, 105 F.3d at 16.  To survive summary judgment on such a claim, a plaintiff must point to evidence in the record to support (1) that he was engaged in protected conduct; (2) that he experienced an adverse employment action; and (3) that there was a causal connection between the protected conduct and the adverse employment action.  Calero-Cerezo, 355 F.3d at 25; Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st Cir. 2014).  Regarding the third prong, the plaintiff must show that the protected activity was the but-for cause of the adverse employment action he experienced – or, that the adverse employment action would not have occurred without the protected activity.  Palmquist v. Shinseki, 689 F.3d 66, 77 (1st Cir. 2012) (explaining that the ADA contains a but-for causation standard for retaliation and extending same standard to related provisions of Rehabilitation Act of 1973).  Absent direct evidence of retaliation, as is the case here, once the plaintiff makes a prima facie showing, the burden shifts to the defendant to produce evidence of a "legitimate, non-retaliatory reason" for the adverse employment action. Trainor v. HEI Hosp., LLC, 699 F.3d 19, 26 (1st Cir. 2012) (internal citation omitted).  If the defendant presents such evidence, "to avoid an entry of summary judgment against him, [a plaintiff] must offer evidence that would allow a reasonable jury to find 'that the employer's proffered reason is pretextual and that the actual reason for the adverse employment action is discriminatory.'"  Rios v. Centerra Grp. LLC, 106 F.4th 101, 112 (1st Cir. 2024) (quoting Johnson v. Univ. of Puerto Rico, 714 F.3d 48, 54 (1st Cir. 2013)).

Here, Susi alleges that his demand that Noonan write him an apology for calling him a drug addict constituted protected activity under the Rehabilitation Act and that this protected activity resulted in two adverse employment actions: 1) Tarantino assigning Susi tedious,

undesirable tasks and not allowing him to rotate off these tasks, and 2) Noonan not reporting his August 23, 2020 injury, informing him of his right to see a doctor, or providing him with the claim reporting paperwork.  Even assuming that Susi's allegations rise to the level of "protected activity" and "adverse employment actions," Susi has provided very little evidence that the protected activity caused or even contributed to these adverse actions, and his retaliation claim fails as a result.[9]

First, regarding Tarantino's job assignments, Defendants argue that Susi cannot show a causal connection because Tarantino was the one assigning the tasks, not Noonan.  [ECF No. 42 at 1–16].  Although Susi has arguably created an issue of fact as to whether Noonan was telling Tarantino to give Susi the undesirable assignments,[10] this dispute is immaterial because Susi has provided no evidence that, even accepting his version of events, Noonan instructed Tarantino to do so because Susi previously demanded an apology from her for calling him a drug addict.[11]

---

[9] For clarity, the Court is performing the relevant causation analysis under the Rehabilitation Act because, as discussed supra, it construes Susi's claims as arising under that act.  That said, to the extent Susi intended his allegations to arise under Title VII, that statute also requires that the protected activity be the but-for cause of the adverse employment action, and thus the Court's analysis would remain the same under that statute.  Stratton v. Bentley Univ., No. 22-1061, 2024 WL 3823034, at *11 (1st Cir. Aug. 15, 2024) (stating that, under Title VII, "plaintiff must show that their employer would not have taken the adverse action but for a desire to retaliate").

[10] Although the parties agree that Tarantino assigned Susi to the less desirable tasks, Susi alleges that Tarantino would "leave it to [] Noonan to make sure [Susi] did them" and that he "would blame everything on [Noonan]."  [Susi Dep. 107:17–25].

[11] To the extent Susi is relying on a temporal connection between the apology letter and the assignments, Susi has failed to provide any evidence of when these assignments were given, including whether Tarantino's habit of assigning Susi to undesirable tasks predated the apology letter.  See King, 596 F. Supp. 3d at 226 (adverse actions cannot be caused by protected activity when the former pre-dates the latter).  Moreover, at his deposition, when discussing these undesirable assignments, Susi said that he "did not know why" Tarantino assigned him these tasks and that they "happened constantly," [Susi Dep. 27:19–28:7], cutting against the inference that the assignments were retaliatory for the apology incident.

He similarly has not alleged that Tarantino, in the absence of Noonan's coaching, gave these assignments because of the apology letter incident or even that Tarantino knew about the apology. Stratton, 2024 WL 3823034, at *11 (stating that, in the context of Title VII, but-for causation requires "proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action" and that "[w]ithout evidence of a decisionmaker's knowledge of the protected conduct, the adverse action could not have been caused by a desire to retaliate against the plaintiff") (internal quotation omitted); Alvarado v. Donahoe, 687 F.3d 453, 459 (1st Cir. 2012) ("[O]ur cases have in the past explained that, to successfully establish a claim of unlawful retaliation there must be, at a minimum, ... competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged....") (internal quotations omitted). The only evidence that Susi has provided of animus consists of several negative comments from Tarantino (and other supervisors) made to him during the relevant time period.[12] That said, although each comment does evidence that the supervisors were not particularly fond of Susi, none of them connect that dislike to the apology letter incident in particular or to Susi's alleged disabilities more generally. [Susi Dep. 30:11–19, 61:1–4, 62:5–7]. As such, the comments are insufficient to support a causal connection between the alleged protected activity and the undesirable assignments. Rios, 106 F.4th at 120 (finding no causation between protected activity and adverse action where plaintiff did not testify that relevant

---

[12] These include being told he was "lucky" have a job at USPS, [Susi Dep. 30:11–19, 61:1–4], that "we're not too fond of you here either," [Susi Dep. 62:6–7], and that he should "[d]eal with [his] fuckin bitch Lynn Noonan," [Susi Dep. 62:5–6].

individuals "made any comments… that could lead a reasonable jury to infer that his supervisors… had any discriminatory animus towards him due to his disability").[13]

Noonan's failure to report Susi's injury or to tell him that he could leave work to see a doctor also fails to constitute retaliation for similar reasons. Susi has provided no evidence that Noonan failed to report his injury because of the apology letter incident in April 2020, other than to assert that she has only failed to report an injury one other time in her career and that she did not particularly like him. [ECF No. 50 ¶¶ 28–29].[14] At his deposition, he was similarly unable to articulate his reason for believing that Noonan's failure to report his accident was retaliatory. [Susi Dep. 85:4-86:16]. Without more, the allegation amounts to no more than Susi's speculation that her dislike of him, which he assumes must have been motivated by the April 2020 incident, led her not to report the injury, which is not enough to make out a prima facie

---

[13] It is unclear from Susi's Amended Complaint and his opposition to Defendant's summary judgment brief whether he is arguing that being assigned to move dollies on the day of his accident constituted an adverse employment action. Susi has created a dispute of fact as to how long he was required to be stationed moving the dollies, whether he requested to be rotated away from the dollies after two hours, and whether he volunteered for the assignment. [ECF No. 43 ¶ 34; ECF No. 50 ¶ 20]. Assuming Susi created this factual dispute because he intended to argue that the dollies assignment constituted an adverse employment action, Susi once again fails to provide any evidence that the decision to assign him dollies or a refusal to rotate him off was at all related to the apology letter or to his perceived disability. Even viewing the evidence most favorably to Susi and assuming that he was assigned to the dollies for more than the standard two-hour shift, Susi admitted at his deposition that, when he asked Noonan to assign another employee to help him with the task, she told him that she did not "have help for him." [Susi Dep. 31:13-20]. This refusal, as recounted by Susi, bears no relation to his disability or to his protected activity, and it ultimately constitutes a disagreement over Noonan's decision not to allow him to rotate. Stratton, 2024 WL 3823034, at *11 (stating that Title VII's retaliation provision "does not protect an employee's right to make run-of-the-mill complaints about their supervisor's management style").

[14] To the extent Susi intended to rely on a temporal connection between the two incidents, nearly four months passed between the protected activity and Noonan's failure to report, and "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity." Calero-Cerezo, 355 F.3d 6, 25 (1st Cir. 2004).

case. See Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003) ("Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.") (internal quotation omitted).[15]

Because Susi has failed to show that his protected activity was the but-for cause of any adverse employment action, his retaliation claim fails, and Defendant's motion for summary judgment as to Count II is GRANTED.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, [ECF No. 41], is GRANTED.

**SO ORDERED.**

August 30, 2024                                                      /s/ Allison D. Burroughs
                                                                     ALLISON D. BURROUGHS
                                                                     U.S. DISTRICT JUDGE

---

[15] Moreover, even if Susi could demonstrate causation, Defendant has provided a legitimate explanation for Noonan's delay – namely, that she did not realize the extent of Susi's injury at the time. [ECF No. 42 at 14–15]. Both parties agree that Noonan did not see the injury because Susi put his shoe back on his foot before reporting his injury, [Susi Dep. 47:21–48:7; ECF No. 43 ¶ 7], and both parties agree that Susi returned to work both after the incident and the following day without requesting further assistance or time off work. [ECF No. 43 ¶¶ 7–11; ECF No. 50 ¶ 24]. Both parties also agree that Noonan did report Susi's injury after he saw a doctor. [ECF No. 43 ¶ 14; ECF No. 50 ¶ 38]. All of these facts support the contention that Noonan may not have been aware of the extent of the injury, and Susi has provided no argument or evidence that this justification is pretextual. As such, even if he had provided evidence of causation, Susi's claim would fail on the record as submitted under the proper burden shifting analysis.